United States District Court
Southern District of New York

-------------------------------------------------------X

Index _____ /20___

**13 CV 9167**

**Petitioner**

<u>COMPLAINT</u>

SUSAN SUAREZ

-against-

FAMILY COURT, LORI S. SATTLER, GEORGE JUROW,
SUPREME COURT, COMMISSION ON HUMAN RIGHTS,
ADA MONUSKY, 7TH PRECINCT, DETECTIVE BIBBENS
PARKLANE MANAGEMENT CORP., AGENTS, OFFICERS,
MANEOCHOOR HAIMOFF, JOE HAIMOFF, MICHAEL PIMIENTA
JERRY KAHEN, Criminal Court, Appellate
Court

**Respondent/s**

Please see attached.

-------------------------------------------------------X

TO THE United States District Court
     Southern District of New York

The complaint of the plaintiff ___Susan Suarez_____,
respectfully Shows and alleges as follows:

**AS AND FOR A FIRST CAUSE OF ACTION (SEXUAL HARASSMENT)**

1. The plaintiff, Susan Suarez, at all times herein mentioned was and still is a resident of the County of New York and the State of New York.

2. At all times mentioned herein, defendants Park Lane Management Corp., agents Manoocheur Haimoff, Jerry Kahen, and its officers are residents of, New York City and the State of New York.

3. On or about, March 10, 2010, Park Lane Management Corp, agents, Manocheur Haimoff, Jerry Kahen, and its officers, created a hostile living environment using discriminatory conduct that a reasonable person of the same sex in the plaintiff's position would consider sufficiently severe or

1

Defendant No. 1   Name __Family Court__
                  Street Address __60 Lafayette__
                  County, City __NYC__
                  State & Zip Code __NY   10012__
                  Telephone Number _____

Defendant No. 2   Name __Lori S. Sattler__
                  Street Address __60 Lafayette__
                  County, City __NYC__
                  State & Zip Code __NY   10012__
                  Telephone Number _____

Defendant No. 3   Name __George Jurow__
                  Street Address __60 Lafayette__
                  County, City __NYC__
                  State & Zip Code __NY   10012__
                  Telephone Number _____

Defendant No. 4   Name __Supreme Court__
                  Street Address __60 Centre Street__
                  County, City __NYC__
                  State & Zip Code __NY   10012__
                  Telephone Number _____

II.   **Basis for Jurisdiction:** _See rider attached for additional defendants_

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.   What is the basis for federal court jurisdiction? *(check all that apply)*
     ☒ Federal Questions          ☐ Diversity of Citizenship

B.   If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? __Violent interference with my liberties & rights, violation of my civil rights, violation of Disability, gender, race conspiracy against my rights__

C.   If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

     Plaintiff(s) state(s) of citizenship _____
     Defendant(s) state(s) of citizenship _____

Defendant 5 NYS Commission on Human Rights
Defendant 6 ADA Manusky
Defendant 7 7th Precinct

Defendant 8   Detective Bibbens
Defendant 9   Park Lane Management Corp
Defendant 10  Agents - Park Lane Mgmt Corp
Defendant 11  Officers - Park Lane Mgmt Corp
Defendant 12  Maneochoor Haimoff Park Lane Mgmt Corp
Defendant 13  Joe Haimoff - Park Lane Mgmt Corp
Defendant 14  Michael Pimienta Park Lane Mgmt Corp
Defendant 15  Dr Jerry Kahen Park Lane Mgmt Corp
Defendant 16  Criminal Court
Defendant 17  Appellate Court

pervasive to alter the conditions of tenant, and to create an intimidating, hostile, and offensive living environment.

4. That the complaint of discriminatory conduct would not have occurred but for her gender, and it was severe or pervasive enough to make a reasonable woman believe that the conditions of tenant are altered and the living environment is hostile and abusive.

5. That the defendants Park Lane Management Corp, agents Manoocheur Haimoff, Jerry Kahen, and its officers subjected the Plaintiff to hostile environment sexual.

6. On or about March 12, 2010, shortly after my surgery, Michael Pimienta contacted me and informed me that he was the new owner of 70-80 Kenmare Street, NY, N.Y. 10012.

7. Furthermore, Mr. Pimienta stated that I had to move out since he was converting the building into Condos and that he would assist me with the moving expenses.

8. According to Mr. Michael Pimienta, Jacqueline Suarez, (one of my assailants), informed him that I was arrested twice and that I was a convict.

9. Mr. Michael Pimienta stated that he would make it very difficult for me to stay in my home and that I might be arrested again if I remained.

10. On or about May 18, 2010, Park Lane Management Corp. began a Non-Primary Tenant Eviction proceeding that has lasted for almost four years.

11. Park Lane Management Corp. did not take the Non-Primary Tenant Eviction case to trial even though they had four years of discovery given to them without any facts nor findings.

12. Throughout the fifty years of living at 70-80 Kenmare Street, Park Lane Management Corp, agents, Manoocheur Haimoff, Jerry Kahen, Michael Pimienta subjected me to racial slurs and derogatory epithets of spic, fucken spic, whore, just to mention a few.

13. On or about December 8, 2012, I began a Housing Preservation Action to repair the violations that HPD Inspectors established.

14. On January 9, and 10, 2013, court order dates to complete the repairs but they were never done by Mr. Leonardo, and Mr. Kelvyn who told me they

worked for Bronx Repair Co. and Park Lane Management Corp. hired them.

15. In good faith, I spoke to these workers several times including their boss Jack Sakosiez who assured me that they would complete all the repairs.

16. On or about November 27, 2013, Lawrence Silberman blatantly lied in an Affirmation in Opposition papers that stated I did not grant the workers access into my apartment on January 9, and 10th, 2013, and this is why they could not complete the repairs.

17. On December 5, 2013, I showed the Judge proof that the workers were in my apartment on January 9, 10th, 2013, and November 15, 2013, that they never completed the repairs and their lies were another ploy to manipulate the process and to continue harassing me.

18. On November 12, 2013, Mr. Lawrence Silberman, lawyer for Park Lane Management Corporation manipulated the process and had me impleaded in a Housing Preservation Action to repair the broken windows in my apartment.

19. Since 2010, I have tried for Park Lane Management Corporation to repair the broken windows and other violations that HPD Inspectors established.

20. The courts seem to give Mr. Lawrence Silberman everything he demands since he places me in a false light and in spite of the fact that I produce evidence to repudiate his false allegations against me.

21. November 15, 2013, a court scheduled date to repair the broken windows, the broken radiator risers, and everything else that needed repair, but Park Lane Management Corp. workers refused to follow the court order and complete the necessary and vital repairs.

22. Throughout the years, Park Lane Management Corp. sent undocumented workers to harass, threaten, intimidate me, and even tried to kill me.

23. On December 5, 2013, Mr. Lawrence Silberman blatantly lied on record that I refused for the workers to remove the windows and that I agreed for them to return on November 19, 2013.

24. I have no reason to impede the workers from completing the repairs, when I have two small children in the apartment and it is hazardous with two broken windows, and steam filling up the apartment from two broken radiator risers.

25. On or about November 11, 2011, my neighbor was discovered dead in her apartment, as a result of my neighbor being dead for almost two months unbeknownst to me upon removal of the body I had to endure the stench of a decaying body, maggots, and flies in my apartment.

26. On or about June 29, 2012, demolition of my neighbor's apartment began, the workers deliberately placed sheet rock and debris in front of my door blocking the entrance to my apartment.

27. The demolition caused major cracks in my walls and ceiling, and the workers did not take any measures to ensure the safety of the tenants.

28. The Department of Health found lead in my apartment caused by the dust and debris from the demolition that the workers created in my dead neighbor's apartment which infiltrated into my adjacent apartment and would fill the air inside my apartment with aforementioned dust and noxious fumes to the point where it would become difficult to breath.

29. HPD found various violations from the construction and forced them to take the necessary measures to ensure the safety of the tenants.

30. Park Lane Management Corp. refused to do a Lead Abatement in my apartment.

31. Park Lane Management Corp. sent an undocumented worker who came to my apartment with a Windex spray bottle and a rag. This is what Park Lane Management Corp. was attempting to pass off as the proper procedure for the required Lead Abatement. When I told him that he could not spray Windex on the walls while my grandchildren and I were in the apartment, the worker became belligerent and took my radio and threw it across the room. I became very fearful at that point, I told him he needed to leave before I called the police.

32. Jack Sakosiez who posed as an HPD Lead Abatement Specialist called me and told me that I had to let the worker return to do the Lead Abatement and I told him no that I was very afraid and I would not allow the worker to return to my apartment being that I felt threatened.

33. On or about January 03, 2013, in my HPD action, I found out in court that Jack Sakosiez is not an HPD Lead Abatement Specialist instead he stated in court that he is the owner of Bronx Repair Co. and he was hired by Park Lane Management Corp.

34. On or about June 10, 2010, I filed a complaint with the Commission on Human Rights on Park Lane Management Corp. for discrimination against disability and race.

35. Park Lane Management Corp. placed me in a false light that the Commission on Human Rights sided with them and violated my civil rights.

36. On or about March 1, 2012, I met the deadline to submit my papers that were imposed by the Commission on Human Rights, while there I was asked to meet with the Deputy Commissioner, Cliff Mulqueen who told me that if I did not sign the ten page Conciliation Agreement my case would be closed.

## AS AND FOR A SECOND CAUSE OF ACTION (FALSE ARREST & IMPRISONMENT)

37. On or about December 10, 2008, and January 30, 2010 in the County of New York, the Plaintiff was unlawfully detained, arrested imprisoned by agents, servants, and/or employees of the CITY without any probable cause.

38. That the aforesaid and imprisonment was malicious, callous, conspiratorial, unlawful and not based upon a warrant, probable cause, and/or any other justification, and was therefore a false arrest and imprisonment.

39. That the defendants, Family Court, Lori S. Sattler, George Jurow, Supreme Court, Park Lane Management Corp, agents, Manoocheur Haimoff, Jerry Kahen, and it's officers, and through their relationship with Jacqueline Suarez, William Rivera, and Police Officer Detective Kevin Madden, and other affiliates acted, in bad faith and without probable cause in committing the aforesaid arrest and imprisonment of Plaintiff.

40. At the time of Plaintiff's unlawful arrest and imprisonment, Plaintiff had not committed or attempted to commit any illegal act.

41. At the time of Plaintiff's unlawful arrest and imprisonment, the defendants knowingly and intentionally disseminated false and defamatory police statements.

42. The aforesaid arrest and imprisonment was made with knowledge of and/or negligent and/or reckless disregard of the material falseness of the criminal complaint(s).

43. The aforesaid false arrest and imprisonment caused Plaintiff to suffer severe physical injuries and permanent injuries, emotional and psychological

distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses, and damage to her reputation.

44. By reason of the foregoing, the defendants became liable to the Plaintiff in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## AS AND FOR A THIRD CAUSE OF ACTION
## (MALICIOUS PROSECUTION)

45. On or about January 30, 2010, the defendants and their agents, officers, servants and or employees, including their affiliates intentionally, knowingly, recklessly, negligently, and with malice caused the commencement of a criminal prosecution against the Plaintiff in the Criminal Court of the City of New York, County of New York, upon the filing of an accusatory instrument without probable cause.

46. On or about January 30, 2010, the defendants maliciously conspired with Jacqueline Suarez, William Rivera, Detective Kevin Madden, servants and/or employees, including their affiliates to have Plaintiff killed in her deceased mother's home located at 286 South Street, #2A, New York, New York 10012.

47. The defendants altered and gave false documents to various organizations in order to place the Plaintiff in a false light and slander her reputation as a Teacher.

48. In commencing and continuing the said malicious prosecution, defendants caused Plaintiff to be falsely charged with acts in violation of the Penal Law of the State of New York. The Plaintiff had not committed or attempted to commit any illegal act(s).

49. The Plaintiff had not given defendant(s), its agents, servants and/or employees, including Detective Kevin Madden, probable cause to believe that she had committed the falsely, charged illegal acts.

50. The defendants knew that Detective Kevin Madden and associates would use the color of the law and his authority and would not exercise reasonable care and proper police procedure, that the said investigation into this matter was flawed and incomplete.

51. The defendants, its agents, servants and/or employees, and associates, including Detective Kevin Madden, and associates willfully, negligently and

wrongfully accused the Plaintiff of having committed acts in violation of The Penal Law of the State of New York.

52. The defendants, Family Court Lori S. Sattler, George Jurow, Commission on Human Rights, Park Lane Management, its agents, Manoocheur Haimoff, Jerry Kahen, servants and/or employees, including their affiliates, Jacqueline Suarez, William Rivera, and their associate Detective Kevin Madden, willfully, negligently and wrongfully continued to prosecute the Plaintiff for alleged violations of the Penal Law of the State of New York, even though the defendants knew or should have known of facts and circumstances that would have lead a reasonable person to conclude that the-criminal complaint, upon which said criminal prosecution was based, contained material falsehoods and was otherwise improper, and that the continued prosecution of the Plaintiff was, therefore, improper under the circumstances.

53. On or about August 18, 2009, and December 9, 2010 said criminal complaint was dismissed and sealed.

54. As a result of the malicious prosecution, the Plaintiff was caused to suffer and continues to suffer severe physical pain, suffer severe emotional and psychological distress, anguish, anxiety, and fear, and humiliation, loss of wages, legal expenses, and damage to her reputation.

55. By reason of the foregoing, the defendants became liable to the Plaintiff in the sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## AS AND FOR A FOURTH CAUSE OF ACTION (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

56. The aforementioned actions of defendants were so outrageous, malicious, and shocking that it exceeded all reasonable bounds of decency tolerated by average members of the community.

57. Defendants acted with the desire and intent to cause Plaintiff emotional distress or acted under circumstances known to them, which made it substantially certain that they would cause such emotional distress.

58. Defendants acted with utter disregard of the consequences of their actions.
59. As a result, Plaintiff was caused to suffer the intentional infliction of emotional distress, negligent infliction of emotional distress.

### AS AND FOR A FIFTH CAUSE OF ACTION (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

60. On or about December 10, 2009, and January 30, 2010 the defendants conduct created an unreasonable risk of causing the Plaintiff emotional distress.

61. Defendant's breach of duty of care, resulted in the Plaintiff's being placed in fear of physical harm.

62. Plaintiff witnessed an injury, crime, financial abuse, to her mother while in the zone of danger which was created by the defendant(s) and their affiliates.

63. Plaintiff's emotional distress was foreseeable.

64. Defendant's conduct and the relationship with their associates was the cause of the Plaintiff's distress.

### AS AND FOR A SIXTH CAUSE OF ACTION (BREACH OF FIDUCIARY DUTY)

65. That a fiduciary relationship existed which gave rise to a duty of loyalty on the part of the defendant(s).

66. Defendants had an obligation to act in the best interests of the plaintiff.

67. Defendants had an obligation to act in good faith in any matter relating to the plaintiff.

68. That the defendant advanced his or her own interests to the detriment of the plaintiff.

69. That the plaintiff sustained damages.

70. That the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty.

### AS AND FOR A SEVENTH CAUSE OF ACTION (PUNITIVE DAMAGES)

71. Defendant's wrongdoing is not simply intentional but evinces a high degree of moral turpitude and demonstrates wanton dishonesty as to imply a criminal indifference to civil obligations.

## AS AND FOR A EIGHTH CAUSE OF ACTION (COMPENSATORY DAMAGES)

72. Plaintiff seeks to recover actual damages on a claim for breach of fiduciary duty.

73. The measure of damages is the loss sustained, including lost opportunities for profit by reason of the faithless fiduciary's conduct.

## AS AND FOR A NINTH CAUSE OF ACTION (VICARIOUS LIABILITY)

74. Responsibility of the superior for the acts of their subordinate(s).

75. The responsibility of any third party that had the "right ability or duty to control" the activities of the violator(s).

## AS AND FOR A TENTH CAUSE OF ACTION (SECONDARY LIABILITY)

76. That the indirect infringement, arises when a party materially contributes to, facilitates, induces, or is otherwise responsible for directly infringing acts carried out by another party.

77. Breach of confidence.

78. Invasion of privacy.

79. Defamation of character and false light.

## AS AND FOR A ELEVENTH CAUSE OF ACTION (VIOLATION OF CIVIL RIGHTS)

80. The Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "86" of the complaint as if fully set forth herein. The actions of defendant heretofore described resulting from the December 10, 2008, and January 30, 2010 arrests, detention, imprisonment, use of excessive force, and prosecution of the Plaintiff, constitute an unlawful arrest, imprisonment, and malicious prosecution which deprived the Plaintiff of rights, privileges, and immunities as granted under the United States Constitution, Amendments One, Four, Five, and Fourteen, the New York State Constitution, the Civil Rights Acts, 42 U.S.C. § 1981, 1983, 1985, 1986, and 1988 and the complained of conduct was either the result of an official policy or unofficial custom, including but not limited to, policies and customs concerning the hiring, training, supervision, retention and discipline of the CITY's agents, servants

and/or employees, and those involving the arrest, detention and prosecution of individuals, including and especially, those persons such as the Plaintiff who are of Hispanic descent.

81. The defendants conspiratorial actions deprived Plaintiff of her liberty in violation of her civil and constitutional rights as set forth in the United States Constitution, 42 U.S.C. § the Constitution of the State of New York.

82. Defendants conjured and conspired with their Police Officer associate(s) including Detective Kevin Madden so that his actions were undertaken under color of law and would have not existed.

83. That the defendants' conspired with each other and acted in concert to discriminate against and deprive the Plaintiff of her Constitutional and Civil rights.

84. That the defendants' motivations were in contravention of the United States Constitution and the Constitution of the State of New York.

85. By reason of the foregoing, the Plaintiff has been damaged and suffered serious and severe permanent physical injuries, emotional distress, and emotional harm as a result of these deprivations of constitutional and civil rights.

86. As a result, the defendants became liable to the Plaintiff in a sum of money which exceeds the jurisdictional limits of courts of a lesser jurisdiction.

## AS AND FOR A TWELFTH CAUSE OF ACTION DISCRIMINATION AGAINST GENDER, DISABILITY, RACE, AGE

## AS AND FOR A THIRTENTH CAUSE OF ACTION CIVIL HARASSMENT

That in the event that the Plaintiff is successful in the prosecution of the aforesaid claim(s), Plaintiff shall be a prevailing party within of 42 U.S.C. § 1.988 and entitled to the recovery of said attorneys' fees from the defendants.

Contingent Liability.

WHEREFORE, Plaintiff respectfully requests judgment against the defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction, together with the costs and disbursements of this action.

Dated: _____

*Susan Suarez*
Plaintiff

## VERIFICATION

I *Susan Suarez*, being duly sworn, deposes and says:

    I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on the information and belief and as to those matters I believe them to be true.

_____
Signature

*Susan Suarez*
Print Name

Sworn to before me this

\_\_\_\_\_day of_____20\_\_\_\_

_____
Notary Public

11